# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                             No. CR 06-611 JB

ARTURO SANTOS-SANTOS,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum and Motion for Sentence Varying from the Guideline Range, filed July 24, 2006 (Doc. 20)("Sentencing Memorandum"). The Court held a sentencing hearing on August 9, 2007. The primary issues are: (I) whether the Court should grant Defendant Arturo Santos-Santos a downward departure under the United States Sentencing Guidelines because his criminal history category under the Guidelines substantially over-represents his criminal history; and (ii) whether the Court should grant Santos-Santos a variance from the sentence the Guidelines recommend, because that sentence is greater than necessary to achieve federal sentencing goals. Because the Court does not believe that Santos-Santos' criminal history category over-represents his criminal history, and because the Court believes that the sentence the Guidelines recommend is reasonable, the Court will deny Santos-Santos' motion and impose a sentence within the guideline range.

## FACTUAL BACKGROUND

The Court has carefully reviewed the factual findings in the Pre-Sentence Investigation Report ("PSR") that the United States Probation Office ("USPO") prepared in this matter. Because

Santos-Santos does not object to any of the factual findings, see Transcript of Hearing at 3:20-21 (Nieto)(taken August 8, 2007)("Transcript"),[1] the Court will adopt those findings as its own.

On August 23, 1993, Santos-Santos was arrested and charged with possession of base/rock cocaine for sale.  See PSR ¶ 20, at 6.  The charges were eventually reduced, and, on September 13, 1993, Santos-Santos was convicted of accessory to a crime, a misdemeanor, in the San Francisco, California Municipal Court, and was sentenced to one day in jail.  See id.

Four days after his first arrest, Santos-Santos was arrested a second time, on August 27, 1993, after police officers discovered twenty-nine small rocks of crack cocaine on his person during an encounter in which they had stopped Santos-Santos for drinking a bottle of wine on the street.  See id. ¶ 21, at 6-7.  On October 12, 1993, Santos-Santos was convicted of possession of base/rock cocaine for sale in the San Francisco County Superior Court, and sentenced to forty-seven days in jail, followed by three-years probation.  See id.

On November 12, 1993, Santos-Santos was arrested after police officers discovered thirty rocks of crack cocaine in his possession.  See id. ¶ 22, at 7.  Santos-Santos was convicted of possession of base/rock cocaine on January 11, 1994 in the San Francisco County Superior Court, and sentenced to one year in prison, followed by three-years probation.  See id.

Santos-Santos was arrested for possession of concentrated cannabis on August 9, 1994.  See id. ¶ 23, at 7.  He pled guilty in the San Diego, California Superior Court on August 23, 1994, and was sentenced to two years in prison and $200.00 in fines on October 11, 1994.  See id.  Santos-Santos was deported to Mexico on November 30, 1995.  See id. ¶ 5, at 3.

On January 24, 2001, a United States Border Patrol ("USBP") agent encountered  Santos-

---

[1]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Santos sleeping on the ground in Columbus, New Mexico.  See id. ¶ 24, at 8.  Santos-Santos originally told the agent that he was an Indian and a United States citizen.  See id.  After further questioning, Santos-Santos admitted to the agent that he was a Mexican national and present in the United States illegally.  See id.  On June 5, 2001, Santos-Santos was convicted of re-entry of a deported alien in the United States District Court for the District of New Mexico , and sentenced to 37 months imprisonment, followed by two years of unsupervised-supervised release.  See id.  He was  deported to Mexico on October 1, 2003.  See id.

On December 31, 2005, USBP agents encountered Santos-Santos walking west towards State Road 11 near Columbus.  See id. ¶ 4, at 3.  When questioned about his citizenship, Santos-Santos admitted to the agents that he was a Mexican national and present in the United States illegally.  See id.

## PROCEDURAL BACKGROUND

On March 21, 2006, a federal grand jury returned an Indictment charging Santos-Santos with illegal re-entry of a deported alien after having been previously convicted of an aggravated felony in violation of 8 U.S.C. § 1326(a)(1)-(2) and (b)(2).  See Indictment, filed March 21, 2006 (Doc. 8).  On May 2, 2006, the United States and Santos-Santos entered into a plea agreement, made pursuant to rule 11 of the Federal Rules of Criminal Procedure, in which Santos-Santos pled guilty to the charge contained in the Indictment.  See Plea Agreement ¶ 3, at 2, filed May 2, 2006 (Doc. 16).

In calculating Santos-Santos' adjusted offense level for purposes of his guideline sentence, the USPO assigned Santos-Santos a base offense level of 8, see U.S.S.G. § 2L1.2(a), increased his offense level by 12 levels because he had previously been deported after being convicted of a felony drug trafficking offense for which the sentence imposed was thirteen months or less, see U.S.S.G. § 2L1.2(b)(1)(B), and subtracted 3 levels for Santos-Santos' acceptance of responsibility, see

U.S.S.G. § 3E1.1.  See PSR ¶¶ 11-12, 18, at 4-5.  In calculating Santos-Santos' criminal history category, the USPO assigned Santos-Santos 3 points for his August 23, 1994 conviction for possession of concentrated cannabis and 3 points for his June 5, 2001 conviction for illegal re-entry of a deported alien.  See id. ¶ 23-24, at 7-8.  Santos-Santos' total of 6 criminal history points establishes a criminal history category of III.  Santos-Santos' offense level of 17, combined with his criminal history category of III, results in a guideline sentencing range of 30 to 37 months.

Santos-Santos filed his Sentencing Memorandum on July 24, 2007.  Santos-Santos does not argue that the USPO calculated his guideline sentence incorrectly, but rather asks the Court: (I) to grant him a downward departure under the Guidelines because his criminal history category over-represents his criminal history, see Sentencing Memorandum at 6; and (ii) to vary from the sentence that the Guidelines recommend, because the guideline sentence is greater than necessary to satisfy federal sentencing objectives, see id. at 2.  Santos-Santos requests that the Court sentence him to a term of 12 months imprisonment.  See id. at 1.

The United States filed a response in opposition to Santos-Santos' requests for a downward departure and a variance on August 3, 2007.  See Response to Defendant's Sentencing Memorandum, filed August 3, 2007 ("United States' Response").  The United States contends that a sentence within the correctly calculated guideline range is a presumptively reasonable sentence, and argues that Santos-Santos has not presented evidence effectively rebutting that presumption. See id. at 2.  The United States requests the Court impose a sentence at the low end of the guideline range.  See id. at 6.

## LAW REGARDING GUIDELINE SENTENCES

The Supreme Court of the United States' holding in United States v. Booker, 543 U.S. 220 (2005), "requires a sentencing court to consider Guideline ranges, but it permits the court to tailor

the sentence in light of other statutory concerns as well." Id. at 245-46.  Under the new advisory

guideline scheme, "district courts have a freer hand in determining sentences." United States v.

Trujillo-Terrazas, 405 F.3d 814, 819 (10th Cir. 2005).  Thus, "while the Guidelines will exert

gravitational pull on all sentencing decisions . . . district courts now have more discretion to tailor

sentences to the individual circumstances of a defendant." Id.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than

necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

(A) to reflect the seriousness of the offense, to promote respect for the law, and to
provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

© to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical
care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D).  See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty

of an offense described in any Federal Statute . . . shall be sentenced in accordance with the

provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D)

of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the

case.").  To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (I)

the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available

sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes;

and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United

States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of

several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference.  See

-5-

Rita v. United States, 127 S. Ct. 2456, 2464 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."  United States v. Cage, 451 F.3d at 593 (internal quotations omitted).  A sentencing court must now consider all the factors enumerated in 18 U.S.C. § 3553, including the Guidelines, and resolve conflicts between them.

In Justice Breyer's remedial opinion in United States v. Booker, the Supreme Court recognized the important role that the advisory Guidelines continue to play in facilitating Congress' goal of achieving national uniformity of sentencing.  See 543 U.S. at 246.  To conform with Congressional intent, sentences must be "reasonable."  Id. at 260-61.  Consistent with that recognition, the Tenth Circuit has adopted a two-step approach to reviewing criminal sentences for reasonableness.  See United States v. Kristl, 437 F.3d 1050, 1055 (10th Cir. 2006).  First, the Tenth Circuit reviews the district court's consideration of the applicable guideline range; if "the district court properly considered the relevant Guidelines range and sentenced the defendant within that range, the sentence is presumptively reasonable."  Id.  Second, once this presumption is established, "[t]he presumption can be rebutted by demonstrating the sentence is unreasonable when considered against the other factors enumerated in 18 U.S.C. § 3553(a)."  United States v. Dazey, No. 05-6258, 2007 U.S. App. LEXIS 19343, at *25 (10th Cir. Aug. 2, 2007)(unpublished).

On the other hand, criminal sentences that vary materially from the properly calculated

guideline sentencing range are not accorded a presumption of reasonableness.  See United States v. Cage, 451 F.3d at 594-95.  The Tenth Circuit has explained that "the strength of the justification needed to sustain an outside-Guidelines sentence varies in proportion to the degree of the variance." Rita v. United States, 127 S. Ct. at 2467 (citing United States v. Bishop, 469 F.3d 896, 907 (10th Cir. 2006)).[2]

Finally, the Supreme Court has recently explained that the presumption of reasonableness afforded guideline sentences is "an appellate court presumption" and emphasized that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."  Rita v. United States, 127 S. Ct. at 2465.  More specifically, "[a] nonbinding appellate presumption that a Guidelines sentence is reasonable does not require the sentencing judge to impose that sentence."  Id. at 2466 (emphasis in original).

## ANALYSIS

Santos-Santos contends that a range of 30-37 months is greater than necessary to achieve the goals of sentencing discussed in § 3553(a).  Santos-Santos argues that the Court should impose a sentence below the range the Guidelines recommend, because the facts and circumstances surrounding his case make a sentence within the guideline range greater than necessary to satisfy federal sentencing objectives.  Because the Court believes that, when it considers the circumstances of Santos-Santos' case in the context of the statutory factors applicable to the Court's sentencing

---

[2] In its June 21, 2007 opinion in Rita v. United States, the Supreme Court indicated that it will evaluate the Tenth Circuit's approach next term in United States v. Gall, No. 06-7949.  See Rita v. United States, 127 S. Ct. at 2467 (citing United States v. Bishop, 469 F.3d at 907, and cases from the First, Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits that apply the same approach). The Supreme Court cautioned, however, that "[t]he fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may adopt a presumption of unreasonableness" for sentences that fall outside the guideline range.  Rita v. United States, 127 S. Ct. at 2467.

analysis under 18 U.S.C. § 3553(a), the sentence that the Guidelines recommend is reasonable, the Court will impose a sentence within the guideline range.

I.    **SANTOS-SANTOS' CRIMINAL HISTORY CATEGORY DOES NOT OVER-REPRESENT HIS CRIMINAL HISTORY.**

Santos-Santos' criminal history score results from two previous offenses: (I) an August 23, 1994 conviction for possession of concentrated cannabis; and (ii) a June 5, 2001 conviction for illegal re-entry of a deported alien.  The USPO assigned Santos-Santos three criminal history points for each of these convictions.  See PSR ¶ 23-24, at 7-8.  Santos-Santos' total of six criminal history points results in a criminal history category of III.

Santos-Santos argues that a criminal history category of III over-represents his criminal history.  First, Santos-Santos notes that, with the exception of his conviction for illegal re-entry, each of his criminal convictions is related to a controlled substance offense; Santos-Santos asserts that he has had problems with substance abuse and was formerly addicted to crack cocaine.  See Transcript at 5:13-19 (Nieto).  Santos-Santos also asserts that the factual circumstances of his controlled substances convictions reveal that he was, "at best, an inept street-level drug peddler." Sentencing Memorandum at 7.  He emphasizes that he has no history of violence or of a sophisticated criminal nature.  See id. at 6.

Pursuant to U.S.S.G. § 4A1.3, the Court may grant a downward departure under the Guidelines if it finds that "the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes."  U.S.S.G. § 4A1.3(b)(1) (emphasis added).  While the Court acknowledges the presence of the mitigating factors to which Santos-Santos refers, it does not believe that those factors are so significant that his criminal history category substantially over-represents his criminal

history.

The Court agrees that there does not appear to be evidence that Santos-Santos is violent or anything more than an unsophisticated street dealer.  Nevertheless, his criminal history contains a conviction for a trafficking offense and the evidence suggests that he was involved in other trafficking activities.  Moreover, while Santos-Santos' criminal history score results from only two convictions, his criminal history contains numerous other convictions and arrests.  Further, although Santos-Santos may believe that his controlled substances offenses are not violent, when criminal activity involves drugs, there is always a potential for violence.  In sum, in light of his history involving narcotics distribution, the Court cannot say that a criminal history category of III -- in the lower half of criminal history categories classified under the Guidelines  -- substantially over-represents Santos-Santos' criminal history.  The Court will not grant Santos-Santos a downward departure under the U.S.S.G. § 4A1.3(b)(1).

## II.   THE 18 U.S.C. § 3553(a) FACTORS SUGGEST THAT THE ADVISORY GUIDELINE SENTENCE IS REASONABLE FOR SANTOS-SANTOS.

Although a presumption of reasonableness does not limit a sentencing court's discretion, see Rita v. United States, 127 S. Ct. at 2465, the Court continues to believe that the Guidelines are a helpful place to begin its sentencing analysis and are useful in keeping sentences consistent among similarly situated defendants.  In this case, when the Court considers Santos-Santos' personal history and characteristics, the nature of the offense that is the subject this conviction, and his criminal history, it believes that the sentence the Guidelines recommend is reasonable.       The Court has carefully considered the factors enumerated in 18 U.S.C. § 3553(a) applicable to its sentencing analysis.  Although some of the information about Santos-Santos' background manifests difficult and heartbreaking experiences, his facts and circumstances do not present an extraordinary situation

-9-

that materially differs from the majority of other Mexican nationals who enter the United States illegally to improve their life circumstances.

### A.     THE NATURE AND CIRCUMSTANCES OF THE OFFENSE.

Santos-Santos argues that the crime of illegally re-entering the United States is a status crime that does not involve violence, and that he did not illegally reenter the United States to engage in criminal activity.  See Sentencing Memorandum at 3.  Santos-Santos also contends that the 12-level increase in the base offense level, assessed pursuant to U.S.S.G. § 2L1.2(b)(1)(B), is overly harsh as, because it results in a significant increase in his sentence and because he has also received criminal history points in association with that offense.  See Sentencing Memorandum at 5-6.

While there is a tendency for defendants to characterize illegal re-entry as a minor crime, Congress and the Sentencing Commission have signaled otherwise with the serious penalties they have assigned to the crime.  Congress has provided for sentences of up to 20 years, see 8 U.S.C. § 1326(b)(2), and the 8-level, 12-level, and 16-level enhancements, see U.S.S.G. § 2L1.2(b)(1)(A)-©, often place the crime within Zone D on the Sentencing Table.  Policy decisions are best left with the legislative branch.  More important, Santos-Santos' suggestion that his crime is not serious disregards the seriousness of his earlier drug trafficking offense; the Court notes that it is this offense -- which results in a 12-level addition to his base offense level -- and not his illegal re-entry, which constitutes the basis for the significant enhancement in his guideline sentence.  The Court does not believe that the nature and circumstances of the offense counsel for a variance from the guideline sentence.

### B.     SANTOS-SANTOS' HISTORY AND CHARACTERISTICS.

The Court acknowledges that Santos-Santos' personal history and characteristics are somewhat unusual compared to many other defendants that come before the Court. Defendants often

argue that the guideline sentence is unreasonable, because they entered the United States to be with family members or to earn money to provide for family members in their home country.  While the circumstances of these cases are often unfortunate, the Court has held in a number of opinions that family ties to the United States, or illness of family members on one side of the border or another, without more, do not justify a variance from a defendant's guideline sentence.  See United States v. Hernandez-Castillo, No. CR 06-1537 JB, 2007 U.S. Dist. LEXIS 35230, at **26-30 (D.N.M. Apr. 18, 2007)(Browning, J.); United States v. Trinidad-Toledo, No. CR 06-1646 JB, 2007 U.S. Dist. LEXIS 9261, at **12-13 (D.N.M. Jan. 16, 2007)(Browning, J.).

Santos-Santos, on the other hand, argues that his circumstances counsel for a variance because he essentially has no family ties.  While the Court is sensitive to the hardships that Santos-Santos' lack of family ties must impose upon him, it believes that much of the analysis the Court has employed in addressing requests for a variance from defendants with significant family ties applies in this case.  While tragic, without more, the Court does not believe that Santos-Santos' family circumstances justify a variance.

Santos-Santos also contends that the Court should vary from the sentence the Guidelines recommend, because of his history of substance abuse.  See Sentencing Memorandum at 4.  The Court does not disagree that Santos-Santos' criminal history, and the facts and circumstances he has shared about his life, appear to indicate that he has suffered from problems with substance abuse. Regrettably, many defendants who come before the Court suffer from similar problems with controlled substances.  The Court does not believe that Santos-Santos' history of substance abuse counsels for a variance from the guideline sentence.

While plainly unfortunate, Santos-Santos has not demonstrated that his personal problems are any greater than those of any other defendant who has a family and is convicted of illegally re-

entering the United States.  The Court notes that, if these arguments were sufficient to justify a variance from the advisory guideline range, more defendants would qualify for the variance than those who would not, and the exception would swallow the Guidelines' advisory rule.  The Court will not vary from the sentence that the Guidelines recommend based on Santos-Santos' personal history and characteristics.

C.   THE NEED FOR THE SENTENCE TO PROMOTE CERTAIN STATUTORY OBJECTIVES.

Among other objectives, the Court's sentence should reflect the seriousness of the offense, promote respect for the law, provide just punishment, and provide adequate deterrence to both the defendant and to the public at large.  The Court believes that a sentence of 30 months, the low-end of the range the Guidelines recommend, reflects the seriousness of the illegal re-entry offense, but also promotes respect for the law and provides just punishment.  The Court also believes that this sentence affords adequate deterrence and protects the public.  The Court believes that a sentence of 30 months fully reflects each of the factors enumerated in 18 U.S.C. § 3553(a), including the need to impose uniform sentences on similarly situated defendants.

In deciding to impose a guideline sentence the Court has paid particular attention to the need to provide adequate deterrence.  Santos-Santos contends that he understands that he cannot return to the United States and asserts that a sentence of 12 months will be sufficient to deter him from returning to the United States.  See Sentencing Memorandum at 5.  The Court notes, however, that Santos-Santos has previously been convicted of illegal re-entry and has not been deterred from returning to the United States.  Santos-Santos was sentence to 37 months imprisonment in association with his June 5, 2001 conviction, and this sentence has not deterred him from returning. Moreover, the Court understands that, when it considers whether a particular sentence affords

-12-

adequate deterrence, it must evaluate whether the sentence provides adequate deterrence both to the individual defendant and to the public at large.  See United States v. Hernandez-Castillo, 2007 U.S. Dist. LEXIS 35230, at 32; United States v. Vigil, 476 F. Supp. 2d 1231, 1316 (D.N.M. 2007)(Browning, J.).  In light of Santos-Santos' history of recidivism, and the need to promote general deterrence, the Court does not believe that a sentence of 12 months is sufficient to meet federal sentencing objectives.

Finally, the Court believes that the imposition of a sentence within the range the Guidelines recommend is necessary to avoid creating a sentencing disparity between and among other similarly situated defendants.  Most defendants charged with illegally re-entering the United States after deportation could make arguments similar to those that Santos-Santos makes.  If Santos-Santos were entitled to a variance from the advisory sentencing Guidelines based on the reasons he has advanced, more re-entry defendants would qualify for a variance than those who would not.  Without more to distinguish Santos-Santos' case, the Court will not grant him a variance.

In sum, the sentence the Guidelines recommend accounts for Santos-Santos' personal characteristics and the circumstances of his offense.  The guideline sentence also reflects the important policies behind federal immigration laws.  The Court believes that a sentence of 30 months is fair, reasonable, and sufficient without being greater than necessary to meet federal sentencing objectives.

**IT IS ORDERED** that the Defendant's Motion for Sentence Varying from the Guideline Range is denied.  The Court will impose a term of imprisonment of 30 months.

_____
UNITED STATES DISTRICT JUDGE

-13-

*Counsel:*

Larry Gomez
   Acting United States Attorney
Norman Cairns
   Assistant United States Attorney
Albuquerque, New Mexico

> *Attorneys for the Plaintiff*

Arturo B. Nieto
Albuquerque, New Mexico

> *Attorney for the Defendant*